OPINION
{¶ 1} Defendant-Appellant, Charles A. Black, Jr., appeals the judgment of the Seneca County Court of Common Pleas finding him in contempt and granting an extension of a permanent injunction. On appeal, Black argues that the trial court erred when it found him in contempt and granted an extension of a permanent injunction. Based on the following, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} In August 2000, Plaintiff-Appellee, the Seneca County General Health District (hereinafter referred to as "SCGHD"), sent a certified letter to Black and Charles Black, Sr., at 1106 S. SR 587, Fostoria, Ohio, (hereinafter referred to as "the property") in regard to a nuisance complaint investigation by the Seneca County General Health District ("SCGHD") on July 26, 2000. In the letter, SCGHD asked them to "properly dispose of all household trash, scrap tires, old wiring and miscellaneous junk" and to store in a safe and organized manner *Page 3 
his salvaged auto parts and wood on the property within two weeks of the receipt of the letter.
 {¶ 3} In May 2001, SCGHD sent a certified letter to Black and Black, Sr., indicating that an inspection of the property had occurred on April 25, 2001, because of a nuisance complaint "regarding trash and miscellaneous junk improperly stored and/or disposed of on your property * * *." SCGHD noted that the inspection revealed a "[l]arge accumulation of scrap auto parts, scrap tires, old wiring, broken glass, wood, and miscellaneous trash * * * stacked in piles, within various vehicles, and/or strewn around [the] property in a haphazard manner." The letter indicated that they were in violation of Sections 4.05.02 4.08.05 of the Seneca County Premise Sanitation Regulations and that SCGHD would perform a re-inspection of the property on May 25, 2001.
 {¶ 4} In December 2001, SCGHD sent a letter to the Blacks requesting a meeting between them and the Loudon Township Trustees, which subsequently occurred.
 {¶ 5} In January 2002, SCGHD sent a certified letter to Black and Black, Sr., advising them of violations of Sections 4.05.02 4.08.05 of the Seneca County Premise Sanitation Regulations and ordered them, under R.C. 3707.01, to properly store and/or dispose of twenty-one particular items, including automotive engines, parts, wiring, and used tires found on the property. Additionally, the *Page 4 
letter indicated that it was a "NOTICE OF VIOLATION" and noted that they had thirty days to properly dispose of the identified items.[1]
 {¶ 6} In March 2003, SCGHD sent a letter to Black and Black, Sr., entitled "Notice of Continued Violations." In the letter, SCGHD indicated that it conducted an inspection of the property on March 17, 2003, which revealed that the property remained in violation of Sections 4.05.02 4.08.05 of the Seneca County Premise Sanitation Regulations. Additionally, the inspection revealed that the property was in violation of OAC 3745-27, because of a large collection of scrap tires. According to the letter, Black and Black, Sr. had until April 11, 2003, to dispose of or store all of the identified items in it.
 {¶ 7} In April 2003, the Loudon Township Board of Trustees sent Black and Black, Sr.[2] a certified letter indicating that the property was being maintained in a manner which constituted a nuisance and ordering them, under R.C. 505.87, to remove "all vegetation, garbage, refuse and debris, including, but not limited to, all scrap metals, wood, plastic, glass, aluminum, car parts, and junk motor vehicles." Additionally, the letter indicated that if the items listed were not *Page 5 
removed within seven days of the receipt of the letter, the Board would provide for the abatement of the nuisance.
 {¶ 8} On August 4, 2003, the Seneca County Sheriffs Office personally served Black, Black, Sr., and Carol Black (hereinafter collectively referred to as "the Blacks") with a letter advising each of them that they were referred by the Loudon Township Board of Trustees and the Seneca County Prosecuting Attorney about "junk motor vehicle(s) setting on [the] property." Additionally, the letter indicated that "[it] puts you on notice that as the property owner, you have a period of ten (10) days from the receipt of this letter to either cover the vehicles by housing in a garage or other suitable structure, or remove the vehicle(s) from the property" and that "[f]ailure to comply with this notice is prima facie evidence of your willful failure to comply; and each subsequent period of 30 days that a vehicle is left uncovered constitutes a separate offense."
 {¶ 9} On August 19, 2003, SCGHD, the Board of Trustees of Loudon Township, and the State of Ohio, (hereinafter collectively referred to as "Plaintiffs") filed a complaint for injunctive relief against Black, Sr., Black, and Carol Black.[3] *Page 6 
 {¶ 10} In October 2003, the Blacks filed a counterclaim against SCGHD for trespass. Additionally, the trial court denied the portion of Plaintiffs' August 19, 2003 complaint praying for a preliminary injunction of a public health nuisance.
 {¶ 11} On January 7, 2004, a bench trial was held and in February 2004[4], the trial court found the Blacks in violation of Sections 4.05.02 and 4.08.05 of the Seneca County Sanitation Regulations and ordered them to immediately "abate [the] public health nuisance including, but not limited to the proper storing of:" all car parts, fence posts, loose fencing, trash/debris, glass, brush, tarps, ferrous and non-ferrous metals, unlicensed vehicles including trailers, buckets/barrels, and old appliances on or before March 31, 2004.
 {¶ 12} In May 2004, SCGHD filed an affidavit indicating that the Blacks had not abated the public health nuisance at the property.
 {¶ 13} In December 2004, SCGHD filed a motion for contempt against the Blacks. In the affidavit filed with SCGHD's motion for contempt, Laura Wallrabenstein, the Environmental Director of SCGHD, noted that on December 8, 2004, she visited the property and "observed solid waste in the form of carpet, appliances, car parts, trailers, pallets, tires, camper, trash and debris." The trial court set a hearing for February 2005. *Page 7 
 {¶ 14} On February 2, 2005, the parties entered into an agreement to continue the hearing to February 16, 2005. In return for the SCGHD's agreement to continue the hearing, the Blacks agreed to "[f]ully comply with the previous orders of [the trial court]", to "[r]emove everything except licensed vehicles and buildings from the property", that "[a]ny and all personal property at the [property] will be removed or stored in an enclosed building, excepting pallets", "[a] cash bond of $4,000 should [the trial court] find [the Blacks] in contempt of its provisions hereto and herein, and order incarceration of any or all [the Blacks] at its February 16, 2005 hearing, and that "[a]ny and all pallets at the [property] will be removed from the [property] by April 1, 2005."
 {¶ 15} On March 21, 2005, the trial court held the previously scheduled February 16, 2005 hearing on SCGHD's motion for contempt. On March 24, 2005, the trial court entered a Judgment Entry noting that SCGHD admitted that the trial court's orders had "been complied with, except for the pallets, which are to be removed by April 1, 2005 per the prior orders of this Court." The trial court set the matter for further hearing on April 6, 2005.
 {¶ 16} In April 2005, the trial court found that "The Defendant, Charles A. Black, III,[5] by his own admission, has brought more pallets onto the property and *Page 8 
thus has not removed them by April 1, 2005." The trial court found, noting that "[e]nough is enough", "The Defendant" in contempt and sentenced him to thirty days in jail, subject to his removal of all pallets by April 15, 2005 or paying SCGHD the sum of $4,000.
 {¶ 17} On April 15, 2005, Wallrabenstein filed an affidavit indicating that during the afternoon of April 14, 2005, Dustin Kent, a Sanitarian-in-training, visited the property and reported that the pallets had all been removed from the property.
 {¶ 18} In January 2006, SCGHD again moved to find the Blacks in contempt. Included with the motion was an affidavit of Kent, which provided that on December 29, 2005, he visited the property and Black told him that he was manufacturing pallets. Additionally, Kent noted that he observed a trailer of pallets to be broken down and another trailer ready to be shipped off the property.
 {¶ 19} In July 2006, the trial court held a hearing on SCGHD's motion for contempt. After the hearing, the trial court found that Black admitted he currently had pallets on the property, which was also supported by various photographs of the property; that by Black's own agreement and by its own order, "there were to be no pallets on the [property] and they have continued to be there despite this Court's Order and the Defendant's agreement"; that Black be found in contempt; *Page 9 
and, that since this was Black's second contempt, he was sentenced to sixty days in jail. Additionally, the trial court found that "based upon the Defendant's continued refusal to comply with this Court's Order, the [SCGHD] is hereby GRANTED an extension of the Permanent Injunction to July 1, 2008, to maintain control of the premises for compliance. Failure to remove all of the pallets by August 15, 2006 and their continued non-appearance on the premises after that date must be enforced." Finally, the trial court ordered a $100 per day fine "for any pallets found on the premises after August 15, 2006, regardless of their purpose."
 {¶ 20} It is from this judgment Black appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED BY FINDING DEFENDANT CHARLES BLACK, JR. IN CONTEMPT OF AN ORDER OF THE COURT, WHEN THE ORDER THE DEFENDANT HAD INDEED COMPLIED WITH SAID ORDER.
 {¶ 21} In his assignment of error, Black argues that the trial court erred by finding him in contempt, because he had complied with all of the trial court's previous orders. Specifically, Black asserts that when he removed the pallets from the property by April 15, 2005, he had fully complied with the trial court's February 14, 2005, order to remove pallets from the property and abated the public nuisance. Therefore, Black contends that he cannot be held in contempt, because *Page 10 
there were no orders of the trial court which required him to keep pallets off the property. We agree.
 {¶ 22} "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." Moraine v. Steger Motors, Inc. (1996),111 Ohio App.3d 265, 268, citing ConTex, Inc. v. Consolidated Technologies,Inc. (1998), 40 Ohio App.3d 94. "Clear and convincing evidence has been defined as that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Ohio State BarAssn. v. Reid (1999), 85 Ohio St.3d 327, 331 (citations omitted).
 {¶ 23} When reviewing a trial court's finding of contempt, appellate courts apply an abuse of discretion standard. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion implies that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 24} In February 2004, the trial court found the Blacks in violation of Sections 4.05.02 and 4.08.05 of the Seneca County Sanitation Regulations and ordered them to immediately "abate [the] public health nuisance including, but not *Page 11 
limited to the proper storing of:" all car parts, fence posts, loose fencing, trash/debris, glass, brush, tarps, ferrous and non-ferrous metals, unlicensed vehicles including trailers, buckets/barrels, and old appliances on or before March 31, 2004. Additionally, the trial court's entry made no reference to any "permanent injunction" and "abate" generally means to "put an end to or do away with," but does not equate with a permanent injunction. See Webster's Third New International Dictionary, 2002.
 {¶ 25} In May 2004, SCGHD filed an affidavit indicating that the Blacks had not abated the public health nuisance at the property. In December 2004, SCGHD filed a motion for contempt against the Blacks. In the affidavit filed with SCGHD's motion for contempt, Laura Wallrabenstein, the Environmental Director of SCGHD, noted that on December 8, 2004, she visited the property and "observed solid waste in the form of carpet, appliances, car parts, trailers, pallets, tires, camper, trash and debris."
 {¶ 26} Here, the trial court's February 2004 order was to correct an existing problem and did not contain any language that prohibited future conduct. Furthermore, the alleged public health nuisance to be abated never specifically mentioned "pallets."
 {¶ 27} Also, the trial court held additional hearings in March and April 2005, which addressed the issue of pallets. In the trial court's April 11, 2005, *Page 12 
Judgment Entry, the trial court purportedly found Black in contempt and sentenced him to jail, but allowed him to purge the contempt by removing all pallets by April 15, 2005. It is undisputed that Black complied with that order on April 14, 2005, thereby purging himself of the contempt.
 {¶ 28} As noted above, in the trial court's February 2004 Judgment Entry, the trial court did not order a permanent injunction and one cannot be manufactured as a result of some later alleged contempt. Furthermore, since the initial February 2004 Judgment Entry listed 11 types of "nuisance" to be abated, but did not include pallets, we cannot see how Black could have properly been found in contempt for having pallets on the subject property in March or April 2005. Finally, because Black removed the pallets by April 14, 2005, and fully purged himself of that alleged contempt, no further orders of the trial court remained in effect. If the SCGHD deemed the pallets located on the property in December 2005 to constitute a public health nuisance, it was free to initiate a new action against Black.
 {¶ 29} Therefore, we find that the trial court abused its discretion when it found Black in contempt and granted an extension to a non-existent permanent injunction. Accordingly, we sustain Black's assignment of error and remand this matter to the trial court with instructions to dismiss SCGHD's motion for contempt. *Page 13 
 {¶ 30} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
WILLAMOWSKI, J., concurs. SHAW, J., dissents.
[1] The letter also noted that "this list [of items], while extensive, cannot be inferred as the only items requiring attention. You will be notified of unforeseen items needing removal or proper storage as this department identifies them."
[2] It appears from the record that Black, Sr., was sent a copy of the certified letter noted above, but that it was undeliverable.
[3] It is undisputed that Black, Sr., was the owner of the property and that Black and Carol resided at the property.
[4] The trial court filed a judgment entry on February 3, 2004 and on February 6, 2004, filed a Nunc Pro Tunc entry.
[5] We note that this judgment entry named the contemnor as Charles Black, III, rather than Black. We will assume, since no party has alleged otherwise and the original case did not include anyone named Charles Black, III, that this was a typographical error, and the trial court was actually referring to Black. However, if the trial court, in fact, intended that entry to name a Charles Black, III, such action would be another reason to reverse the holding of the contempt against Black.